UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MIKELA JACKSON, and | ) | |
| JEAN KELLY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No.: 1:22-cv-00110-AGF |
| | ) | |
| CITY OF SIKESTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

NOW COME Plaintiffs, MIKELA JACKSON and JEAN KELLY, by and through their counsel, Donlon Brand, LLC, pursuant to FRCP 37 and Local Rule 3.04, and for their Motion to Compel Production of Documents/Materials responsive to their Second Request for Production #1-3, and in support thereof states as follows:

1.      This matter arises from an officer-involved shooting that caused the death of Denzel Taylor in Sikeston, Missouri on April 29, 2020.

2.      On June 20, 2023, Plaintiffs issued their Second Requests for Production to all Defendants. *Ex. A*.

3.      On July 19, 2023, Plaintiffs received Defendants' Objections and Responses to Plaintiffs' Second Requests for Production, which contained objections to four of the five requests (#1-4). *Ex. B*.

4.      On the same day, July 19, 2023, plaintiffs' counsel sent a Golden Rule Letter to defense counsel requesting that the objections be withdrawn, and that complete responses and documents/materials be produced. At the same time, plaintiffs' counsel requested to set a time to speak directly with defense counsel. *Ex. C.*

1

5.      On July 20, 2023, at approximately 3:15 p.m., by telephone, movants' counsel, Melissa Donlon, conferred with the opposing counsel, David Renovitch, in good faith on these issues, but after sincere efforts to resolve the dispute, counsel were unable to reach an accord on Requests #1-3. Counsel were able to reach a resolution as to Request #4 and that Request is not at issue in this motion.

6.      Plaintiffs have requested the following documents/materials of all the named defendants, to which defendants have objected:

1.      "Any and all landline and cell phone records (including both cell phones provided by the City and personal cell phones) for each of the named defendants, including incoming and outgoing phone calls and incoming and outgoing text messages from April 29, 2020 through May 2, 2020. In the alternative, each defendant may complete and sign the attached telephone records authorization form.

2.      Any and all emails sent and received by any of the named defendants and any member of the City of Sikeston DPS that in any way relate to Denzel Taylor.

3.      Any and all text messages sent and received by any of the named defendants and any member of the City of Sikeston DPS that in any way relate to Denzel Taylor."

7.      These requests were carefully tailored to time/date and to person to avoid any broadness or undue burden to the defendants.

8.      These requests are imperative as they may contain admissions of the defendants, statements against interest, or simply provide more factual information regarding the events surrounding the officer-involved shooting that resulted in the death of a 23-year-old father of two (and then three, posthumously).

9.      Defendants have objected to the production of these documents/materials with the same objection to each request:

**"RESPONSE: OBJECTION, not relevant or reasonably calculated to lead to the**

2

discovery of admissible evidence. Also, vague, ambiguous, and overly broad. In addition, invades the parties' reasonable expectation of privacy. Also, requests documents protected by attorney-client privilege and work-product doctrine. Further, this request seeks documents protected by various applicable privileges and laws, including, but not limited to, the Deliberative Process Privilege, Law Enforcement Privilege, Law Enforcement Investigatory Privilege (5 U.S.C. § 552(b)(7)), and the Privacy Act of 1974."

10.     Plaintiffs will address each of these objections, as none are proper objections to

these clearly relevant requests for discoverable information:

> 1.     "Any and all landline and cell phone records (including both cell phones provided by the City and personal cell phones) for each of the named defendants, including incoming and outgoing phone calls and incoming and outgoing text messages from April 29, 2020 through May 2, 2020. In the alternative, each defendant may complete and sign the attached telephone records authorization form.

**RESPONSE TO OBJECTIONS:   Obviously, telephone calls made and received by the defendants may be relevant and are certainly discoverable as they may contain admissions, statements against interest, opinions, or simply more information about the subject shooting. The requested timeframe was purposely narrow, as it includes the day of the shooting and the three days following. Sikeston Policy 13.4.2 states that the involved officer "must not discuss the case with anyone except supervisory and command personnel, their legal counsel, and the department psychologist." These requests are specifically tailored to obtain phone records from the day of the shooting, and the two days after, which is within the time the defendants' officer-involved shooting interviews occurred (4/29/2020 and 5/1/2020). Plaintiffs have a right to know who the defendants spoke to in the days surrounding the shooting. This is not vague nor ambiguous nor overly broad. Further, nothing in these requests seeks to invade attorney-client privilege or the work-product doctrine.**

> 2.     Any and all emails sent and received by any of the named defendants and any member of the City of Sikeston DPS that in any way relate to Denzel Taylor.

**RESPONSE TO OBJECTIONS:   Obviously, emails made and received by the defendants may be relevant and are certainly discoverable as they may contain admissions, statements against interest, opinions, or simply more information about the subject shooting. The requested subject matter was purposely narrow, as it includes only Denzel Taylor, the decedent. Sikeston Policy 13.4.2 states that the involved officer "must not discuss the case with anyone except supervisory and command personnel, their legal counsel, and the department psychologist." These requests are specifically tailored to obtain emails related to Denzel Taylor, who had a *de minimis* criminal history prior to this event, so it is unlikely**

that there would be an overly large database of emails related to him other than related to this case. Plaintiffs have a right to know what the defendants have said about Denzel Taylor in their emails. This is not vague nor ambiguous nor overly broad. Further, nothing in these requests seeks to invade attorney-client privilege or the work-product doctrine.

> 3.    Any and all text messages sent and received by any of the named defendants and any member of the City of Sikeston DPS that in any way relate to Denzel Taylor."

**RESPONSE TO OBJECTIONS:  Obviously, text messages made and received by the defendants may be relevant and are certainly discoverable as they may contain admissions, statements against interest, opinions, or simply more information about the subject shooting. The requested subject matter was purposely narrow, as it includes only Denzel Taylor, the decedent. Sikeston Policy 13.4.2 states that the involved officer "must not discuss the case with anyone except supervisory and command personnel, their legal counsel, and the department psychologist." These requests are specifically tailored to obtain text messages related to Denzel Taylor, who had a *de minimis* criminal history prior to this event, so it is unlikely that there would be an overly large database of text messages related to him other than related to this case. Plaintiffs have a right to know what the defendants have said about Denzel Taylor in their text messages. This is not vague nor ambiguous nor overly broad. Further, nothing in these requests seeks to invade attorney-client privilege or the work-product doctrine.**

11.    Other than the boilerplate objections addressed above, Defendants also attempt to assert privileges that they contend would preclude them from producing the requested documents/materials: (1) Deliberative Process Privilege; (2) Law Enforcement Privilege; (3) Law Enforcement Investigatory Privilege (5 U.S.C. § 552(b)(7)); and (4) the Privacy Act of 1974.

12.    None of these privileges are applicable to the case at bar.

### *Deliberative Process Privilege*

13.    The purpose of the Deliberative Process Privilege is to protect the "quality of agency decisions by allowing government officials freedom to debate alterative approaches in private." *NLRB v. Sears, Roebuck Co.*, 421 U.S. 132, 151 (1965). The Deliberative Process Privilege protects disclosures of certain materials in response to a Freedom of Information Act (FOIA) request, and it is not covered by civil litigation requests by and through the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

14.     Further, even if this privilege were to somehow apply to this case, the U.S. Supreme Court has recognized that the Deliberative Process Privilege protects only pre-decisional materials "reflecting deliberative or policy-making processes," but not materials that are "purely factual." *EPA v. Mink*, 410 U.S. 73, 87-89 (1973). The purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of pre-decisional advisory opinions and recommendations might have on "the 'frank discussion or legal or policy matters' in writing." *NLRB*, 421 U.S. at 150.

15.     The Deliberative Process Privilege applies only to those documents and communications that are *pre-decisional*, meaning they are created prior to the agency reaching its final decision, and *deliberative*, meaning they relate to the thought process of Executive officials and are not purely factual. *See Assassination Archives & Rsch. Ctr. v. CIA, No. 18-5280*, 2020 U.S. App. LEXIS 40001, 5-6 (D.C. Cir. Dec. 21, 2020) ("The privilege covers information that is both 'pre-decisional' and 'deliberative.' Documents are pre-decisional if they were 'generated before the adoption of an agency policy,' and deliberative if they 'refelct[ ] the give-and-take of the consultative process.") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).)

16.     Further, the Deliberative Process Privilege does not protect entire documents. Rather, the Executive Branch must disclose non-privileged factual information that can be reasonably segregated from privileged information in the requested documents. And like other executive privileges, the Deliberative Process Privilege is overcome by an adequate showing of need. *See Comm. on Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 112-14 (D.D.C. 2016) (finding that a congressional committee's need for deliberative materials outweighed the Executive Branch's interest in confidentiality).

5

17.     In the case at bar, Plaintiffs do not seek any pre-decisional materials "reflecting deliberative or policy-making processes." Rather, their requests seek factual information from the defendants regarding their involvement in an officer-involved shooting that resulted in the death of plaintiffs' decedent.

18.     The Deliberative Process Privilege does not apply here. If there are any responsive materials that Defendants' claim fall under said privilege, then they must produce a Privilege Log documenting the same. Otherwise, the responsive documents/materials must be produced.

**_Law Enforcement Privilege_**

19.     The Law Enforcement Privilege is a qualified privilege, and as the Eighth Circuit has held, the privilege is "a very narrow one." *Stephens Produce Co. v. NLRB,* 515 F.2d 1373, 1377 (8th Cir. 1975). Similar to the Deliberative Process Privilege, the Law Enforcement Privilege is a FOIA privilege which protects certain materials from disclosure to the public. This is not a privilege that is to be used in the context of civil litigation as a shield against a claimant who suffered significant damages to their Constitutional rights.

20.     The privilege "need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it." *Id*.

21.     "The privilege is predicated on the public interest in minimizing the disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *SEC v. Shanahan,* No. 4:07CV270 JCH, 2009 WL 1955747 at *1 (E.D. Mo. July 6, 2009).

22.     The proponent of protection under the investigative privilege has the burden of establishing its applicability. *Id.* at *2.

23.     The factors a district court should consider in balancing the public interest in nondisclosure against the need of a particular litigant for access to the purportedly privileged

information include the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information, the impact upon persons who have given information of having their identities disclosed, whether the investigation has been completed, whether the information sought is available through other discovery or from other sources, and the importance of the information sought to the litigant's case. *Id.; quoted by United States of America ex rel Paul Cairns, et al. v. D.S. Medical,* No. 1:12CV00004 AGF at *6 (E.D. Mo. August 26, 2016). "Importantly, across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice." *SEC*, at *2.

24.     Here, the balancing factors weigh in full favor of the needs of the Plaintiffs. To wit, with respect to the extent to which disclosure would thwart governmental processes by discouraging citizens from giving the government information, none of Plaintiffs' requests seek anything about citizens giving the government information, and to the extent the responsive documents include such information, there will be no negative effect on the public to disclose more information with respect to the facts of an officer-involved shooting, whereas the benefit to the litigants in this case could be substantial.

25.     With respect to the impact upon individuals of having their identities disclosed, if this exists, then in all likelihood these individuals have already been revealed in the defendants' Rule 26 disclosures, and they may have provided summaries of the interviews in Defendants' officer-involved shooting investigation. To Plaintiffs' knowledge, there have not been any witnesses who have given information under a shroud of confidentiality or immunity. There is no harm in disclosing these witnesses if they exist as part of the responsive documents/materials.

26.     The criminal and administrative cases against Defendants Golightly, Cotner and Bromo are closed.

27.     There is no other means by which this information sought can be discovered.

28.     This information is potentially central to the Plaintiffs' case.

29.     In sum, Defendants have not met their burden of showing that the policy behind invocation of the investigative Law Enforcement Privilege outweighs the necessity for the information shown by the Plaintiffs and as such, the responsive documents/materials must be produced.

***Law Enforcement Investigatory Privilege (5 U.S.C. § 552(b)(7)) – Freedom of Information Act***

30.     The Law Enforcement Investigatory Privilege in 5 U.S.C. § 552(b)(7) is a Freedom of Information Act ("FOIA") privilege – meaning records or information that is exempt from disclosure to the general public in a FOIA request.

31.     First, the case at bar is not a member of the general public making a FOIA request, so the attempted privilege is wholly inapplicable.

32.     But, for the sake of argument, even if somehow FOIA was found to apply, Defendants' reliance on 5 U.S.C. § 552(b)(7) still warrants disclosure of the requested information.

33.     FOIA maintains nine exemptions to the general presumption of mandatory disclosure. 5 U.S.C. § 552(b)(1)-(9).

34.     5 U.S.C. § 552(b)(7) exempts FOIA production of documents which are "records or information compiled for law enforcement purposes," *but only if* one or more of six specified types of harm would result.

35.     Exemption (7)(A) providers for the withholding of a law enforcement record the disclosure of which would reasonably be expected to interfere with enforcement proceedings. This exemption protects an active law enforcement investigation from interference through premature disclosure. Therefore, determining the applicability of this Exemption 7(A) requires a two-step

analysis focusing on (1) whether a law enforcement proceeding is pending or prospective (**answer here: no**) and (2) whether release of information about it could reasonably be expected to cause some articulable harm. (**also no**) *See e.g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding that government must show how records "would interfere with a pending enforcement proceeding.")

36.     Exemption (7)(B) allows the withholding of information that would deprive a person of a right to a fair trial or an impartial adjudication. It is aimed at preventing prejudicial pretrial publicity that could impair a court proceeding. A reviewing court established a two-part test of the applicability of this rarely used exemption: "(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." *Washington Post Co. v. United States Department of Justice*. 863 F.2d 96, 101-02 (D.C. Cir. 1988).

37.     Here, there is no pre-trial proceeding pending and there is no investigation that would be adversely affected if the desired information is disclosed. In fact, the opposite is true: if the information sought is not disclosed, the Plaintiffs' instant proceeding would be adversely affected.

38.     Exemption (7)(C) recognizes that individuals have a privacy interest in information maintained in law enforcement files. It is the law enforcement counterpart to Exemption 6, providing protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." If the disclosure of information could reasonably be expected to constitute an "unwarranted" invasion of personal privacy, the information is exempt from disclosure.

39.     Here, Plaintiffs do not seek any unrelated personal privacy information about any of the defendant officers, which is why they have tailored their requests so narrowly. Plaintiffs' tailored requests do not constitute "unwarranted" invasion of privacy and thus such exemption does not apply.

40.     Exemption (7)(D) protects the identity of confidential sources. To Plaintiffs' knowledge, there are no confidential sources involved in this case.

41.     Exemption (7)(E) protects from disclosure of information which would reveal techniques and procedures for law enforcement investigations or prosecutions or that would disclose guidelines for law enforcement investigations or prosecutions if disclosure of the information could reasonably be expected to risk circumvention of the law.

42.     Exemption (7)(E) is not at issue in this case as there is no risk of circumventing the law.

43.     Exemption (7)(F) protects law enforcement information which could reasonably be expected to endanger the life or physical safety of any individual.

44.     Exemption (7)(E) is not at issue in this case as there is no danger of this.

45.     Again, while it is Plaintiffs' position that a FOIA privilege is wholly inapplicable to a Federal Rule of Civil Procedure and Federal Rule of Evidence discovery request in a civil lawsuit, even assuming *arguendo* that FOIA somehow applies, the exemptions claimed do not protect from disclosure of the requested documents/materials and therefore they must be produced.

### ***Privacy Act of 1974, as amended, 5 U.S.C. § 552a***

46.     The Privacy Act of 1974, as amended, 5 U.S.C. § 552a, establishes a code of fair information practices that governs the collection, maintenance, use and dissemination of information about individuals that is maintained in systems of records by federal agencies.

47.     The Privacy Act <u>does not</u> apply to state and local governments, and so, it is wholly inapplicable here. State and local government agencies are <u>not covered</u> by the Privacy Act of 1974. *See e.g. Spurlock v. Ashley Cnty.,* 281 F. App'x 628, 629 (8th Cir. 2008); *Brandt v. La Grange*, No. 2:06 CV 1, 2006 WL 2120383, at *3 (E.D. Mo. July 27, 2006).

48.     As such, the requested documents/materials responsive to Plaintiffs' Second Requests for Production #1-3 must be produced.

### <u>*Conclusion*</u>

In conclusion, Plaintiffs' three requests for production at issue must be answered with responsive documents/materials in their entirety, as the claimed privileges do not apply in this case. These are not FOIA requests, rather these are discovery requests in a civil litigation case regarding Plaintiffs' Constitutional rights. Further, these requests see factual information, not pre-decisional deliberative or policy-making processes. Further, if it is found that these privileges somehow do apply, then the Plaintiffs' need for the information requested outweighs the claim for non-disclosure.

Respectfully submitted,

**DONLON BRAND, LLC**

By: */s/ Melissa K. Donlon*
Melissa K. Donlon #71745MO
Nick A. Brand #63380MO
*melissa@donlonbrand.com*
*nick@donlonbrand.com*
222 W. Gregory Blvd., Suite 232
Kansas City, Missouri  64114
Telephone: (816) 621-3322
 Facsimile: (816) 621-3323
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail to all counsel of record this 31st day of July, 2023.

<u>/s/ Melissa K. Donlon</u>